IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
GJ&L, INC.,                    *
                               *
     Plaintiff,                *
                               *
     v.                        *     CV 117-179
                               *
CNH INDUSTRIAL AMERICA, LLC,   *
                               *
     Defendant.                *
```

## O R D E R

Before the Court is Plaintiff's Motion for Partial Summary Judgment. (Doc. No. 17.) The Clerk has given Defendant notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. No. 18.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. The motion has been fully briefed and is ripe for decision.

### I. BACKGROUND

This case arises out of Plaintiff GJ&L, Inc.'s dealership agreement with Defendant CNH Industrial America, LLC. Defendant is the manufacturer of four heavy equipment brands: Case IH Agriculture; Case Construction; New Holland Agriculture; and New Holland Construction. (Bansen Aff., Doc. No. 19-1, ¶ 4.) On December 31, 2008, Plaintiff entered into

an agreement with Defendant ("Dealership Agreement") whereby Plaintiff agreed to open a Case Construction Equipment dealership. (Doc. No. 5-1, at 13.)

Under the terms of the Dealership Agreement, Plaintiff was authorized to operate two dealerships: one in Augusta, Georgia, and one in Pooler, Georgia.[1] (Doc. No. 5-1, at 14; Bansen Aff. ¶ 27.) Plaintiff needs Defendant's permission before opening a new dealership or moving to a different location. (Bansen Aff. ¶ 4.) Plaintiff must also provide warranty services on any of Defendant's products, regardless of where that product was sold. (Id. ¶ 6(g).) Defendant, however, reimburses Plaintiff for such services. (Id. ¶ 11.)

In January 2017, Defendant received notification that Plaintiff wanted to move its Pooler dealership to Savannah, Georgia. (Arrowood Supp. Aff., Doc. No. 17-2, ¶ 7.) Yet Defendant refused to agree until Plaintiff signed an updated dealership agreement. (Id. ¶ 18) Plaintiff alleges that the new dealership agreement included terms that gave Defendant greater control over Plaintiff's dealerships. (Id. ¶ 19.) Consequently, Plaintiff refused to sign. (Id.) Nevertheless, Plaintiff opened and continues to operate its Savannah dealership. (Bansen Aff. ¶ 35.) In November 2017, after

---

[1] Although the Dealership Agreement contemplated that Plaintiff's second dealership would be located in Savannah, Georgia, Defendant subsequently allowed Plaintiff to open its dealership in Pooler. (Doc. No. 5-1, at 14; Bansen Aff. ¶ 27.)

learning that Plaintiff opened its Savannah dealership, Defendant informed Plaintiff that its actions violated the terms of the Dealership Agreement. (Id.) Undeterred by Defendant's notice, Plaintiff continued to operate the Savannah dealership. (Id. ¶ 36.) Defendant responded by refusing to reimburse Plaintiff for warranty services provided on equipment sold at the Savannah dealership. (Arrowood Supp. Aff. ¶ 25.)

Plaintiff initiated this action on November 16, 2017, in the Superior Court of Richmond County, Georgia. (Compl., Doc. No. 1-1, at 7-8.) Plaintiff alleges that Defendant's refusal to approve the Savannah dealership violates Georgia law. (Am. Compl., Doc. No. 11, ¶ 73.) Defendant removed the case to this Court on December 27, 2017. (Doc. No. 1.) Plaintiff now moves for partial summary judgment finding that (1) the Dealership Agreement is subject to Georgia's Regulation of Agricultural Equipment Manufacturers, Distributors, and Dealers (the "Agriculture Act"), O.C.G.A. § 13-8-11, *et seq.* and that (2) Defendant has violated the Agriculture Act by refusing to approve Plaintiff's Savannah dealership.

## II. **LEGAL STANDARD**

A motion for summary judgment will be granted if there is no disputed material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Facts are material if they could affect the results of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view facts in the light most favorable to the non-moving party and draw all inferences in its favor. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The movant initially bears the burden of proof and must demonstrate the absence of a disputed material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must also show that no reasonable jury could find for the non-moving party on any of the essential elements. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

If the movant carries its burden, the non-moving party must come forward with significant, probative evidence showing there is a material fact in dispute. Id. at 1116. The non-movant must respond with affidavits or other forms of evidence provided by Federal Rule of Civil Procedure 56. Id. at 1116 n.3. The non-movant cannot survive summary judgment by relying on its pleadings or conclusory statements. Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). After the non-movant has met this burden, summary judgment is granted only

4

if "the combined body of evidence is still such that the movant would be entitled to a directed verdict at trial – that is, such that no reasonable jury could find for the non-movant." Fitzpatrick, 2 F.3d at 1116.

### III. DISCUSSION

The Agriculture Act was designed to regulate manufacturers and dealers of agricultural equipment to prevent, *inter alia*, unfair business practices and methods of competition. O.C.G.A. § 13-8-11. To advance those goals, the Agriculture Act forbids manufacturers from imposing unreasonable restrictions on dealers and terminating dealership agreements without due cause. O.C.G.A. § 13-8-15(c)(3)(A)-(8.2). It applies to manufacturers and dealers of "equipment," which in turn is defined as "tractors, farm equipment, or equipment primarily designed for or used in agriculture, horticulture, irrigation for agriculture or horticulture, and other such equipment which is considered tax exempt and sold by the franchised equipment dealer." O.C.G.A. § 13-8-12(6). The central dispute in this motion is whether Plaintiff sells "equipment" as defined by the Agriculture Act.

**A. Equipment Primarily Designed for or Used in Agriculture**

Plaintiff argues that the products it sells qualify as

5

"equipment" under the Agriculture Act because the products are "primarily designed for or used in agriculture." Before the Court can decide this issue, it must determine the proper statutory construction of O.C.G.A. § 13-8-12(6). The adverb "primarily" in "primarily designed for or used in agriculture" modifies both "designed for" and "used in." Contrary to Plaintiff's assertion, such a construction follows the traditional rules of grammar and does not re-write the statute. See, e.g., The Chicago Manual of Style § 5.242 (17th ed. 2017) (describing parallel construction). Indeed, other courts that were confronted with similar language have come to the same conclusion. See, e.g., State v. Pacelli, 2015 WL 3869744, at *4 (Kan. Ct. App. June 12, 2015) ("Because the adverb was placed before two verbs used in the disjunctive (or), common sense tells us that this adverb necessarily modifies the two verbs following it."); In re Estate of Luoma, 2013 WL 221446, at *4 (Ohio Ct. App. Jan. 22, 2013) (same). Therefore, to be within this clause, Plaintiff must show that the products it sells are equipment primarily designed for or primarily used in agriculture, horticulture, irrigation for agriculture or horticulture, and other such equipment.[2]

Defendant has raised a genuine factual issue about the

---

[2] Plaintiff concedes that the products it sells are not primarily designed for agriculture. (Doc. No. 23, at 2 n.1.)

primary use of the products Plaintiff sells. To support its opposition to Plaintiff's Motion for Summary Judgment, Defendant filed records from its Electronic Settlement System (the "System"). (Bansen Aff. ¶¶ 14-16; Doc. No. 19-1, Ex. 1.) The System allows Defendant to track how customers use its products. (Bansen Aff. ¶ 15.) After each sale, Plaintiff must designate how the customer intended to use Defendant's product by selecting and entering the appropriate code. (Id.) Records from the System show that only 1.3% of Plaintiff's sales were designated for use in agriculture. (Doc. No. 19-1, Ex. 1, at 1, 11, 14-16, 18, 27, 29-31.) Plaintiff responds that the System was poorly designed and that Plaintiff entered the code "other construction" for every sale as a way to shirk its reporting duty. (Arrowood Supp. Aff. ¶¶ 6-10.) Plaintiff submits records showing that all of its entries in the System were "other construction" and accuses Defendant of forging any sale that was designated for use in agriculture. Plaintiff's records and allegations of forgery are of little consequence for the purposes of summary judgment. Accepting Plaintiff's explanation and disregarding Defendant's evidence would amount to a credibility determination, which is inappropriate at this stage. See Liberty Lobby, 477 U.S. at 249-50. Accordingly, Plaintiff has failed to demonstrate the absence of a disputed material fact as to whether the equipment it sold was

7

primarily used in agriculture, horticulture, irrigation for agriculture or horticulture, and other such equipment.

## B. Other Such Equipment which is Considered Tax Exempt

Plaintiff also claims that the products it sells are tax exempt and therefore qualify as equipment under the clause "other such equipment which is considered tax exempt." See O.C.G.A. § 13-8-12(6). Plaintiff asserts that this clause creates a category of equipment independent from "equipment primarily designed for or used in agriculture." Plaintiff's strained reading isolates the clause from its context in the statute. The definition of equipment in O.C.G.A. § 13-8-12(6) creates three categories: (1) tractors, (2) farm equipment, or (3) equipment primarily designed for or used in agriculture, horticulture, irrigation for agriculture or horticulture, and other such equipment which is considered tax exempt and sold by the franchised equipment dealer. Treating "other such equipment which is considered tax exempt" as an independent category ignores the conjunction "or" separating "farm equipment" and "equipment primarily designed for or used in." It also ignores the word "such," which ties the phrase "equipment which is considered tax exempt" to "equipment primarily designed for or used in agriculture, horticulture, irrigation for agriculture or horticulture."

8

A more convincing reading is that "other such equipment which is considered tax exempt" refers to equipment used in practices similar to "agriculture, horticulture, [or] irrigation for agriculture or horticulture." To fall under this clause, Plaintiff must demonstrate that the products it sells are primarily used for such purposes. As previously mentioned, the primary use of the products Plaintiff sells is a genuine factual issue that cannot be answered through summary judgment.

### IV. CONCLUSION

According to the plain language of O.C.G.A. § 13-8-12(6), there are only three kinds of equipment that fall under the Agriculture Act. Because Plaintiff is unable to establish as a matter of law that it sells such equipment, summary judgment is not appropriate.

Upon due consideration, Plaintiff's Motion for Partial Summary Judgment (doc. no. 17) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 9th day of July, 2018.

_____
UNITED STATES DISTRICT JUDGE